MANUEL NIEVES BONET, Plaintiff and Appellant, *v.* SUCRS. DE J. MORALES DÍAZ, *S. en C.,* Defendant and Appellee.

No. 8665. Argued November 24, 1943.—Decided January 13, 1944.

*Enrique Báez García* for appellant. *A. Ramírez Silva* for appellee.

Mr. Acting Chief Justice Travieso delivered the opinion of the court.

The mercantile partnership Sucrs. de J. Morales Díaz, *S. en C.*, defendant herein, and Harvey's Brokerage Company, of Crowely, Louisiana, entered into a contract whereby the latter sold to the former one thousand bags of rice at the price of $3.30 for delivery C.I.F. at Mayagüez, shipments to be made at the rate of "five a week, beginning during the first fortnight in October," 1939. The contract was signed on September 4, 1939. On the 11th of the same month, the defendant partnership assigned it to the plaintiff and received from the latter a check for $1,000 and an accepted draft for $300, payable 60 days after sight.

In the complaint filed by Manuel Nieves Bonet it is alleged in substance that, after assigning the said contract to the plaintiff, the defendant partnership failed to notify the seller of the assignment made; that plaintiff never received any notice from the seller advising him of its acceptance of the transfer of the contract; that for that reason no one notified the plaintiff of the arrival, at the port of Mayagüez, on October 23, 1939, of the first shipment of 200 bags of rice, and that it was not until the 1st of November following, that the plaintiff had knowledge of that fact, as also of the arrival, on October 28, of the second shipment of 200 bags; that the plaintiff learned of the arrival of the rice on No-

vember 1, 1939, when an employee of the Bank presented to him three bills of lading, each covering 200 bags, and advised him that the rice was deposited with the Mayagüez Dock & Shipping Co., Inc., in the name of the defendant partnership, which had stated that the rice did not belong to it; that the plaintiff refused to receive the rice because it had arrived outside the terms of the contract and because he understood that the delay in shipping it and the failure to notify him of the arrival of the merchandise relieved him from any obligation which he might have had under the contract; that the plaintiff immediately demanded from the defendant the return of the one thousand dollars paid and the cancellation of the accepted draft; that the defendant then took charge of the rice and without informing the seller, Harvey's Brokerage Co., of the action taken by the plaintiff, treated the contract of September 11 as rescinded, sold 600 bags to F. Carrera & Hno. of Mayagüez, and retained the remaining 400 bags; that the defendant partnership, notwithstanding the rescission of the contract, has refused to return to the plaintiff the sum of one thousand dollars or to cancel the accepted draft; that the legal ground on which the plaintiff relies for asserting that the contract was rescinded is based on the fact that the defendant failed to comply with the provisions of §332 of the Code of Commerce. The plaintiff prays that judgment be rendered declaring the contract rescinded and adjudging the defendant to return the sums and draft received, and to pay the costs and attorney's fees.

The defendant answered and alleged, in short, that after it entered into the contract with Harvey's Brokerage Co., it transferred the same to the plaintiff in consideration of a premium or benefit amounting to $1,000, which the plaintiff paid to the defendant, plus the sum of $300 that the plaintiff paid in an accepted draft to Damián del Moral, through whom the assignment of the contract had been made; that

after the first two lots of 200 bags each had been unloaded, the plaintiff refused to accept the bills of lading or to pay for the rice or to withdraw it from the wharf, for which reason the defendant treated the contract as rescinded, paid for the rice to the agents of the seller in Puerto Rico, and was again subrogated in the contract for breach of the same on the part of the plaintiff.

As a special defense, the defendant alleged that it was agreed between it and the plaintiff to give the contract the character of a transfer in which the plaintiff and the defendant participated to the exclusion of Harvey's Brokerage Co.; and that the reason why the agreement was made in this way was that the plaintiff could not make any purchase in his name either from Harvey's Brokerage Co. or from any other mills belonging to the Rice Millers Association, inasmuch as all of them had decided not to make any sales of rice to the plaintiff; that at the time of the transfer of the contract, the price of rice was about $5.00, but when the first shipment arrived, the price had decreased to $3.55, and that it was for this reason that the plaintiff, realizing the impending loss to him, refused to accept the rice on the pretext that the arrival of the same had been delayed; and that the fact is that in the transfer nothing was agreed as to the date of arrival, but only as to that of the shipment of the rice.

After the case was tried, the District Court of Mayagüez rendered judgment dismissing the complaint and adjudging the plaintiff to pay the costs but without including attorney's fees. Feeling aggrieved by that judgment, the plaintiff appealed. In support of his appeal, he urges that the lower court erred in applying to the facts of the case the provisions of the Civil Code instead of those of the Code of Commerce which, as he claims, are the ones to be applied, a mercantile contract being involved and both parties being mer-

chants; and that the judgment appealed from is erroneous, as it is against the weight of the evidence.

■■ That both the plaintiff and the defendant partnership are merchants is a fact admitted under the pleadings. The defendant, however, alleges that the contract between it and the plaintiff was not a mercantile sales contract, but one of transfer of the profits which the defendant might have derived from the rice purchased from Harvey's Brokerage Co.; that the plaintiff did not pay anything on account of the selling price of the rice; that the defendant was not relieved from its obligation toward Harvey's Brokerage Co. with respect to the payment of the rice purchased; that what the defendant had acquired by virtue of the assignment made in its favor by the defendant was the right to secure delivery of the rice through the payment of the price agreed between the defendant and the seller company.

In order to be in a position to determine whether the judgment appealed from is, as alleged by the appellant, against the weight of the evidence, it becomes necessary for us to make a detailed examination of the evidence introduced by both parties.

After the contract between Harvey's Brokerage Co. and the defendant, and the letter whereby the defendant transferred the contract to the plaintiff, had been admitted without objection, the plaintiff took the stand and testified that he did not receive the rice at the time specified in the contract; that according to the contract, the rice should have arrived in Mayagüez on or about the 21st or 22d of October, and that notwithstanding the arrival of the merchandise, it was not until the 1st of November that he was notified that there were two shipments on the wharf; that it was the bank, not the defendant, who had notified him; that on November 1st he wrote to the defendant advising it that he was unable to accept the rice "due to the fact that they had not complied with the form of delivery provided by the agreement"

and that for that reason he had decided to rescind the contract and demand the return of the sum paid; that on November 2d, the defendant answered in writing informing him that "in accordance with said contract of assignment you are bound to assume the payment of that rice to Harvey's Brokerage Co. at the contract price of $3.30 per bag, besides the contracted obligation to pay our prospective profits amounting to $1,300"; that he did not know where the rice was, that he had not sold it nor withdrawn it from the wharf nor authorized any person whatsoever to withdraw it; that on November 10, 1939, he received a letter from the defendant advising him that they had sold the first lot of rice, for account of the plaintiff, to the firm of F. Carrera & Hno. "in order to be able to pay to the seller concern in the United States the amount of the corresponding invoice"; that in said letter he was advised that the lot of 200 bags had been sold at $3.55 per bag, or for a total amount of.$710 and that after paying the amount of the draft, sales commission, and storage there was a balance of $36 which they would retain until a final liquidation of all the lots should be made, when the balance, if any, would be delivered to the plaintiff; that on November 22, 1939, the plaintiff received a letter from the defendant advising him of the sale of two additional lots, 400 bags, at $3.60 per bag, for a total price of $1,440, out of which sum there was a balance of $92; and lastly, that on February 17, 1940, the defendant informed him of the sale of the remaining 400 bags for $1,320, or at the rate of $3.50 per bag, with a balance of $70.27 in favor of the plaintiff.

On cross-examination by the defense, the plaintiff stated that he had purchased the contract for $1,300; that he was bound to pay for the 1,000 bags at the rate of $3.30 each, plus the $1,300, and that the cost to him was $4.60 per hundredweight; that he refused to receive the rice because of the failure to notify him when the merchandise arrived at

the wharf; that it is true that he had alleged in the complaint that he had rejected the rice "as he thought that said rice had not arrived within the contract"; that the rice arrived within the time fixed in the contract; that he did not accept it because under the contract it should have been shipped to his name and it was not so shipped, and, in the second place, because the defendant was bound to notify him of the arrival of the rice and it failed to do so.

The first witness for the defendant was its managing partner Rafols Morales Asencio. He testified that Mr. Damián del Moral had called upon him "to inquire whether he wanted to sell a lot of rice which I had purchased from Harvey's Brokerage Co., and I gladly assigned it to him," stating to Del Moral that he might retain any profits made in excess of $1,000; that he told Del Moral "that I could assign the profits to him, that any amount in excess of $1,000 could be retained by him"; that the defendant would collect the $1,000 as profits "because I did not have the rice"; that he was not an agent of Harvey's Brokerage Co.

On cross-examination, Mr. Morales Asencio stated that he told Del Moral that he was not selling the contract, but the profits; that when he made the agreement only Del Moral and Alejandro Bravo were present; that the person who made the deal with the plaintiff was Del Moral; that in the letter of September 11, 1939, he stated that he was transferring the contract, which covered one thousand bags of rice, "but only on account of the profits"; that he sold the profits and that the contract, must be purchased and paid for by the plaintiff Nieves Bonet; that he had sold him the contract and received the profits; that the rice "cost at the rate of $3.30 and I sold it to him at $4.60"; that he had sold the rice to the plaintiff and that the latter was bound to withdraw it from the wharf; that the defendant withdrew the rice because the plaintiff had decided to rescind the contract and refused to accept the rice and, further, because the

defendant was bound to fulfill its contract with the Harvey's Brokerage Co.; that the plaintiff had not authorized him to withdraw the rice nor to sell it, nor to pay any sales commission or storage charges.

Damián del Moral, a witness for the defendant, testified that he is a broker; that on or about September 9, 1939, the plaintiff asked him whether there was any rice to be purchased, whether he knew of any one who would sell rice; that he answered "I know of a client who has purchased some rice on which he can sell you the profits"; that next day he went to see Morales Asencio and he asked him whether he cared to sell a lot of rice, and Morales said to him: "Yes, of course, so long as you get me one thousand dollars; and any excess on that amount is yours"; that on the 11th the plaintiff called on him and asked him whether he had secured the rice and that he answered yes that he had a deal, and quoted the profits at $1,300; and after some discussion, the plaintiff accepted the price; that on that date the rice was worth at the rate of $5.50 per bag; that the deal made was an assignment of the profits and that the rice would remain and be shipped in the name of the defendant and that if the plaintiff failed to accept the rice, the defendant must take it up; that the first lot of rice arrived on October 23, 1939, and that on the same day, he notified the plaintiff personally, and the Bank also notified him; that he likewise notified him of the successive arrivals of rice; that when he notified him of the arrival pertaining to the 23d, the plaintiff said nothing, but afterwards told him that he did not want the rice, that he was not interested, that Rafols should take charge of the rice; that on September 11, when the transfer was made, the rice was worth at the rate of $5.25 and $5.50, and on October 23d, when the first lot arrived, it was worth $3.60 and $3.70. Cross-examined by the plaintiff, he stated that after the contract was made, the rice belonged to the plaintiff, but if the latter

failed to pay the price, the defendant was the one responsible to the selling firm that it was he who had sold the rice to the best bidder, which was the Carrera firm, but no formal auction was held; that he sold the rice because the defendant was short of funds and must pay the drafts; and that the plaintiff had not authorized him to sell the rice.

The testimony of the witness Alejandro Bravo corroborated that of Del Moral.

From the evidence which we have just summarized, it appears that the defendant mercantile partnership, after purchasing from Harvey's Brokerage Co. 1,000 bags of rice at the price of $3.30 per bag, sold them to the plaintiff, a merchant, for an agreed price of $4.60 per bag, the defendant firm thus making a profit of $1.30 per bag, or a total of $1,300, which sum the plaintiff paid to the defendant at the close of the deal. The evidence believed by the trial court shows beyond a doubt that the rice was shipped and that it arrived at the port of Mayagüez within the time stipulated; that the plaintiff was timely notified of the arrival of the rice; and that the plaintiff was not lawfully justified in refusing to accept the rice or to pay the drafts which were presented to him.

We have, then before us a case in which the buyer in a mercantile contract of sale refused, without just cause, to receive the goods bought. In accordance with §2 of the Code of Commerce, that contract must be governed by the provisions of said code; and in the absence of such provision, by the commercial customs generally observed in each place; and in the absence of both, by those of the general law (*derecho común*).

Section 250 of the Code of Commerce provides:

"If the purchaser refuses without just cause to receive the goods bought, the vendor may demand the fulfilment or rescission of the contract, depositing the merchandise in court in the first case."

According to the above-quoted Section, upon the refusal of Nieves Bonet, the buyer, to accept the rice and to pay the balance of the price thereof, the seller partnership could, at its option, (a) deposit the rice in court and demand the fulfillment of the contract by the purchaser, or (b) treat the contract as rescinded. In the first case, the seller was not legally authorized to seize the rice and sell it without the intervention of the court, especially when account is taken of the fact that the purchaser had paid the sum of $1,300, as a part of the agreed price. The seller chose to treat the contract as rescinded and proceeded to seize the rice and to sell it at a private sale, without first obtaining the consent of the buyer, and without judicial intervention; and it has refused to return the amount received on account of the rice.

Since the seller partnership elected to rescind the contract, it was not bound to deposit the rice in court. It was entitled to seize the merchandise and dispose of it as it saw fit, but subject to a compliance with the provisions of §1247 of the Civil Code, which reads as follows:

"Rescission obliges the return of the things which were the object of the contract, with their fruits and the price with interest; therefore it can only be carried into effect when the person who may have claimed it can return that which, on his part, he is bound to do."

Was the seller legally authorized, upon treating the contract as rescinded, to sell the merchandise for account of the buyer without his consent, and to retain the sum of $1,300? Section 1247 above quoted not only does not grant him such right, but on the contrary imposes upon him the obligation to return the price with interest thereon. To maintain that the seller was entitled to sell the rice for account of the purchaser and to retain the benefit of the contract would be equivalent to hold, notwithstanding the provisions of §250 of the Code of Commerce, that the seller could compel the buyer to fulfill the contract, without being

bound to deposit the merchandise in court as required by said code.

For the reasons stated, we are of the opinion that the lower court erred in dismissing the complaint, and that the judgment appealed from must be reversed and another rendered instead declaring the contract rescinded as between the parties herein, and adjudging the defendant partnership to return to the plaintiff the sum of $1,300, with interest thereon at the legal rate from September 11, 1939, until fully paid, with costs.

Mr. Justice Snyder did not participate herein.